

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2006

# Sanchez v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3719

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Sanchez v. Comm Social Security" (2006). *2006 Decisions.* Paper 814.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/814

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――

Nos. 05-3719

―――――

IRIS SANCHEZ,

*Appellant*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security

―――――

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 03-3272)
District Judge: Honorable William H. Walls

―――――

Submitted Pursuant to Third Circuit. LAR 34.1(a)
June 29, 2006

Before: BARRY, VAN ANTWERPEN and JOHN R. GIBSON*, *Circuit Judges*

(Filed: June 29, 2006)

_____

* The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit
Court of Appeals, sitting by designation.

OPINION OF THE COURT

_____

Van Antwerpen, *Circuit Judge*:

Iris Sanchez appeals the June 9, 2005 Order of the District Court affirming the decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("SSDIB"). The Commissioner determined Mrs. Sanchez had not established the existence of an impairment of the requisite severity prior to the expiration of her insured status. We have jurisdiction pursuant to 28 U.S.C. § 1291 and for the following reasons will affirm.

I.

Two undisputed facts frame this appeal: The Commissioner admits Mrs. Sanchez was disabled within the meaning of the Social Security Act ("Act") as of November 23, 1999, and Mrs. Sanchez admits her last day of insured status was some eleven months prior to that date, on December 31, 1998. From these facts rise the question whether Mrs. Sanchez was disabled and unable to perform work in the relevant time period.

Mrs. Sanchez filed an application for SSDIB and SSI benefits on January 23, 2001, claiming disability on the basis of both physical and mental limitations: chronic panic attacks and depression, on the one hand, and eye disease and progressive vision loss, on the other. Her application for both DIB and SSI was initially denied, but SSI benefits were granted upon reconsideration based on the Commissioner's admission, as noted, that

Mrs. Sanchez was indeed disabled within the meaning of the Act as of November 23, 1999. SSDIB was nonetheless denied at the reconsideration stage on the grounds that Mrs. Sanchez's insured status had expired eleven months earlier, on December 31, 1998. Mrs. Sanchez filed a petition for de novo review before an Administrative Law Judge (ALJ) and a hearing was held on June 18, 2002. On January 23, 2003, the ALJ issued a ruling denying Mrs. Sanchez's application on the grounds that, notwithstanding the conceded November 23, 1999 date of onset, the December 31, 1998 last day of insured status precluded an award of benefits. Mrs. Sanchez requested review by the Appeals Council, which concluded there were no grounds for review. Mrs. Sanchez then commenced a civil action in District Court seeking review of the Commissioner's final decision. The District Court affirmed, concluding substantial evidence supported the Commissioner's decision. This appeal followed.

The non-medical record evidence shows Mrs. Sanchez was born in 1943, has an eighth grade education level, has past work experience as a machine operator in various manufacturing factories, and possesses mental, intelligence, and vision impairments. She cannot read or drive as a result of her eyesight and cannot perform some basic household tasks as a result of her panic attacks and depression. The non-medical evidence also shows, however, as discussed, that Mrs. Sanchez was able to work as a machine operator prior to 1993. Thereafter, until 1998, the non-medical evidence also shows she was able to participate in church-related social functions and work such as preparing sandwiches

3

and selling items at church festivals and bazaars.

The medical evidence shows that prior to December 31, 1998, Mrs. Sanchez was seen for several years by two of her own doctors, an internist and an ophthalmologist. Her internist, Dr. Alvarez, treated Mrs. Sanchez from 1993 to January 1999 for nervousness and panic attacks, prescribing several medications but not diagnosing Mrs. Sanchez as suffering from major depression. Her ophthalmologist, Dr. Shapiro, examined Mrs. Sanchez's eyes annually from 1994 to 1998. He opined that her vision was 20/40 in her right eye and 20/200 in her left.

After December 31, 1998, six additional doctors either examined Mrs. Sanchez or reviewed her medical file. First, a state agency physician and a psychologist requested by the Social Security Administration ("SSA") reviewed the available medical evidence and performed a psychological examination, respectively. The medical doctor opined there was no evidence to support a finding of disability prior to December 31, 1998. The document states "[m]edical information remains the same, there is no medical evidence for the period alleged" as the basis for the doctor's opinion.

The psychologist, in turn, examined Mrs. Sanchez for a one-hour assessment and subsequently issued a four-page report stating that Mrs. Sanchez reported "both medical and psychiatric difficulties" including "extremely poor vision since she was a child." This report summarizes chronic panic attacks, anxiety, and sleep disorders lasting ten years or longer. With respect to her "mental status," the SSA-requested psychologist

4

concluded that Mrs. Sanchez's "mood is depressed." With respect to her "cognitive processes," the psychologist opined that while Mrs. Sanchez was "well oriented to time, place, and person," her ability to remember numbers was "in the deficient range," she was unable to perform Serial 7 tests in either English or her native Spanish, "her concentration is poor," and "[h]er current intellectual functioning is estimated in the Borderline to Low Average range." This report also indicates that Mrs. Sanchez is sometimes able to "cook [and] make the dinner," but that other times she is incapacitated due to "depress[ion]." This report makes a DSM-IV provisional diagnosis of "Major Depressive Disorder, Recurrent, r/o Psychotic Features, R/O Panic Disorder, Anxiety Disorder NOS," "R/O Borderline Intellectual Functioning with primary lang., non-vis. test", and also diagnoses two physical medical conditions, "Corneal ulcer" and "cystoid macular degeneration." Finally, the report states that Mrs. Sanchez's symptoms are "chronic."

Subsequently, a second state agency physician reviewed the available medical and mental records and opined that Mrs. Sanchez had "markedly limited" limitations — the most severe category appearing on the standard SSA "Mental Residual Functional Capacity Assessment" form he filled out — as to attention, concentration, performing activities within a schedule, maintain regular attendance, maintain punctuality, complete a normal workday and workweek without interruptions due to psychologically based symptoms, travel in unfamiliar places, use public transportation, or set realistic goals. This doctor additionally opined that Mrs. Sanchez suffered from "[e]xtremely poor vision

d/f congenital visual defect" and "long [history] of [depression and panic attacks]." This doctor also opined that "[a]lthough there has been some improvement recently [with] meds," Mrs. Sanchez still had "significant" impairment. This doctor opined that Mrs. Sanchez "is unable to maintain pace, persistence and conc[entration] in work-related activities."

Next, a third state agency physician reviewing Mrs. Sanchez's same records opined that an onset date of disability of November 23, 1999 was supported by the medical evidence.

Finally, a second ophthalmologist and second psychologist examined Mrs. Sanchez. The two-page report of this ophthalmologist states that Mrs. Sanchez reported "poor vision and it has been getting worse," and concludes that, upon examination, Mrs. Sanchez's best corrected vision is 20/70 in the left eye and 20/400 in the right eye, with "patient . . . seeing approximately J7 at near, struggling. Patient could not be corrected with acuity despite refraction . . . . Visual fields were done, which revealed severely constricted visual field left eye, and markedly constricted visual field right eye."

This doctor opined that "patient[] could be employable in some capacity, but however, should not being working [sic] around dangerous machinery, or work which requires [sic] excellent vision in both eyes."

The three page report of the second psychologist, in turn, stated that Mrs. Sanchez had a "standard IQ of 71 that falls within the borderline range of intelligence and places her at the third percentile rank of the population." This psychologist also opined that Mrs. Sanchez's "depression may have affected somewhat her performance," that she

"functioned within the borderline range of intelligence," that the psychologist's "[c]linical impression is that she probably falls more toward the low average range of intelligence." This psychologist concluded his report by opining: "Essentially, this is an individual who suffers from recurrent depression, panic attack with agoraphobia and anxiety disorder. Her condition is chronic and will last more than one year. She is presently functioning in the low borderline range of intelligence."

## II.

While we exercise plenary review over the Order of the District Court, our scope of review is limited to whether the Commissioner's determination is supported by substantial evidence. 42 U.S.C. § 405(g); *Newell v. Commissioner of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (citations omitted); *see also Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance," and is evidence which "a reasonable mind might accept as adequate to support a conclusion." *Id*. Where evidence in the record is susceptible to more than one rational interpretation, the Court must endorse the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).

## III.

In this case, at step-two of the five-step analysis, which is employed to determine whether an individual is disabled, the Commissioner found that Mrs. Sanchez did not have a severe medically determinable impairment as of December 31, 1998, her last insured date. In light of the evidence we have summarized *supra*, and having scrutinized the record as a whole, we conclude that Mrs. Sanchez is correct that there exists more

than one rational interpretation of the record. Nevertheless, in such circumstance, we "must endorse the Commissioner's conclusion[,]" as there exists "more than a mere scintilla of evidence" supporting it. *Richards*, 402 U.S. at 401; *Plummer*, 186 F.3d at 427.

Specifically, in determining Mrs. Sanchez was not entitled to disability benefits, the ALJ properly identified and summarized each doctor's report as well as all of Mrs. Sanchez's non-medical evidence. In addition, our review of the record confirms that Mrs. Sanchez has not proffered evidence to show that her impairments were sufficiently severe during the discrete time period relevant to our review. The burden is on Mrs. Sanchez to produce such evidence. *See, e.g., Plummer*, 186 F.3d at 428. Mrs. Sanchez's argument that her *later* disability status leads inexorably to the conclusion that she was necessarily disabled in an *earlier* relevant time period is unpersuasive, and is offered without support.

Mrs. Sanchez also alleges the ALJ erred in denying her claim at step two of the five-step sequential evaluation process required pursuant to 20 C.F.R. § 404.1520. The step-two inquiry, which is intended as a screening device, was not applied in error here. *See, e.g., Newell*, 347 F.3d at 546. Here again, it was Mrs. Sanchez's burden to introduce evidence sufficient to satisfy the threshold requirements of step two, and the record evidence shows she did not satisfy that burden. *See, e.g., Plummer*, 186 F.3d at 428.

IV.

For the foregoing reasons we will affirm the Order of the District Court.